747 So.2d 1061 (2000)
B.F., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-1644.
District Court of Appeal of Florida, Fifth District.
January 14, 2000.
*1062 James B. Gibson, Public Defender, and John M. Selden, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Alfred Washington, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
B.F. appeals the denial of his motion to withdraw his plea and his resulting sentence.
On April 14, 1999, B.F. was arrested for felony battery, a third-degree felony. § 784.041, Fla. Stat. (1997). The "probable cause" affidavit filed on B.F.'s arrest stated in its entirety that:
The undersigned has probable cause to believe the above-named defendant, on the 14th day of April, 1999, at approximately 5:20 p.m., at Darby Ave. and Burwood Ave. (Zone 45) in Orange County did:
Intentionally strike the victim against his will several times on the face. In the process he caused great bodily harm due to the fact the victim could not see out of his left eye. The victim's eye was black and blue and he had several lumps around his face as well as abrasions on his chest, left elbow, and left knee.
The following day, the State filed a petition for delinquency, charging B.F. with aggravated battery, a second-degree felony. § 784.045, Fla. Stat. (1997). The petition alleged that B.F. had committed aggravated battery upon "Mathew Steven Halm" in that he had committed a battery on him, in the commission of which he "did intentionally or knowingly cause great bodily harm, permanent disfigurement or permanent disability."
The same day, B.F. appeared with his parents at an initial detention hearing. B.F.'s hearing was held as part of a "group" hearing involving a number of juveniles, some of whom were present for an arraignment and some of whom were present for detention hearings. The trial judge spoke to everyone present at the outset of the hearing, explaining the nature of the hearing and informing them of certain rights, including their right to counsel. The entirety of his remarks concerning the right to counsel were as follows:
As a person who's charged with a delinquent act, you have certain, absolute, Constitutional rights that are guaranteed to you under the United States Constitution and that of the State of Florida. I will outline those Constitutional rights for you. They are as follows: You have the right to be informed of the official charge or charges that the State has filed against you. You have the right to have a trial before a judge, and at that trial the burden is upon the State to produce witnesses and evidence and to establish for the judge that you are guilty of the charge beyond a reasonable doubt. At that trial, you have the right to be represented by an attorney who has the right to question, confront and cross examine all of the witnesses that appear for the State. You also have the right to present your own case, with your own defense, your own evidence and your own witnesses. And if those witnesses will not appear for you voluntarily, you have the right to use the appropriate court process, the power of subpoena, to insure that those witnesses will appear for you and testify on your behalf at trial....
* * *
You have the right to have an attorney represent you in defending you against this charge. And if you cannot afford to retain your own attorney, you have the right to request that the Court consider the appointment of a Public Defender. If you are thinking about entering a plea *1063 of not guilty here this afternoon and requesting the appointment of a Public Defender, you need to be aware that the court deputy should have given you financial affidavits to fill out before I came out. Those affidavits should be filled out when your case is called and hand them to me and I'll review them and determine whether or not you qualify for the appointment of a Public Defender. There is a Florida Statute that imposes a $40 court cost for the request for the appointment of a Public Defender. That cost will be taxed and shall be paid at the Clerk of the Court's office across the hall before the end of your case. The services of the Public Defender are also assessed as an attorney fee in the sum of $150. If you're given a contract court-appointment attorney, then it's $250. You do have a right to have a hearing regarding the amount of the attorney fee. If the attorney fee is not paid before the end of your case, it will become a lien on the public record with regard to any real property you, your parent or guardian may own. You have a right to discuss this matter with an attorney before entering a plea.
If you are thinking about entering a plea of guilty here this afternoon, then you need to be aware that in entering the plea of guilty, you will be telling me certain things, and I will outline for you exactly what it is that you will be telling me if you enter the plea of guilty. If you enter the plea of guilty, you will be telling me that you understand the charge. You'll be telling me that you admit the charge. You'll be telling me that you wish to give up your right to have a trial, that you wish to give up your right to have an attorney represent you here this afternoon, that you wish to give up your right to appeal the facts of this case unless you have specifically reserved your right to appeal the pretrial matter. That you are entering the plea freely and voluntarily, that no one has forced you, threatened you or made you any promises in order to get you to enter this plea, and that you wish to resolve the matter here this afternoon.....
B.F.'s case was later called by the court. B.F. entered a plea of guilty to the charge of aggravated battery, a second-degree felony during these proceedings. The entirety of these proceedings were as follows:
THE CLERK: In the Interest of [B.F.], JU99-2739.
THE COURT: Good afternoon. Tell me your name please.
THE CHILD: [B.F.].
THE COURT: Okay. Sir, tell me your name.
FATHER: [H.F.].
MOTHER: [D.F.].
THE COURT: Good afternoon.
[Y]ou're here for arraignment in 99-2739. In this case, the State's filed a petition for delinquency against you. They allege that you committed the offense of aggravated battery causing great bodily harm, a second-degree felony. How do you wish to plead to that charge, guilty or not guilty?
THE CHILD: Guilty.
THE COURT: Did you hear the arraignment speech I gave when I first came out?
THE CHILD: Yes, sir.
THE COURT: Did you hear and do you understand the constitutional rights that you're giving up or waiving by entering this plea?
THE CHILD: Yes, sir.
THE COURT: Do you also understand that you are at some disadvantage this afternoon because you're without an attorney, that if you wanted an attorney, I would consider appointing one for you? Do you understand that?
THE CHILD: Yes, sir.
THE COURT: Do you wish to give up those rights and go forward with this plea of guilty?
THE CHILD: Yes, sir.

*1064 THE COURT: Are you entering the plea freely and voluntarily?
THE CHILD: Yes, sir.
THE COURT: Has anyone forced you, threatened you, made you any promises to get you to enter this plea?
THE CHILD: No, sir.
THE COURT: Are you presently under the influence of any drugs or alcohol?
THE CHILD: No, sir.
THE COURT: Do you have any mental or emotional disturbances?
THE CHILD: No, sir.
THE COURT: Court finds that you're alert and intelligent. You've entered this plea freely and voluntarily. There is a factual basis for the Court's acceptance of your plea found in the sworn affidavit of the law enforcement officer contained within this court file. Court does accept your plea of guilty to this charge.
Is there anything you'd like to tell me?
THE CHILD: No, sir.
THE COURT: Okay. Mr. or Mrs. [F.], anything you'd like to tell me?
FATHER: Not at this time.
THE COURT: Ma'am?
MOTHER: No, sir.
THE COURT: Okay. His disposition date?
THE CLERK: (Indiscernible words).
THE COURT: Okay. I'm showing you score out enough points to continue to hold you in secure detention. I'll hold you until the date of your disposition, which is April 26th at 9:30, and I'll see you at that time. Thank you.
Eight days after entering his plea, B.F., appearing through counsel, filed a motion to withdraw his guilty plea. The motion stated that the plea had been entered without the benefit of counsel and that "the child did not fully understand the law which applies to his case," which had "influenced his entry of the plea."
The court held a hearing on B.F.'s motion to withdraw his plea. Defense counsel argued that "when [he] was in court, he actually thought he was entering a plea to a misdemeanor." He also argued that the plea should be vacated because B.F. was "just not aware of the varying degrees of a battery." Additionally, defense counsel indicated that B.F. had a defense to the charge, stating:
I have statements from witnesses who were there, a witness who was actually involved in what went on. I believe that after we're able to present this (indiscernible words) second-degree felony.
The court noted that B.F. would have been given a copy of the charges, which had "F-2" on it. B.F. admitted that he had received a copy of the charges, although he said he "didn't have a chance to read it all." The court also noted that it goes through a "broken record" speech at the outset of each hearing. Finally, the court noted that it had informed B.F. of the specific charge against him and what level of offense it was. The court ultimately refused to vacate B.F.'s plea, finding no legal basis to do so. B.F. was again continued in secure detention.
At B.F.'s disposition hearing, the court noted that the offense for which B.F. was being sentenced was an extremely "serious" offense, stating:
I want you to understand how serious this offense was. That just by the commission of this one offense, I know that you have a prior that was taken care of in JASP, so this really isn't your first offense, but the first one that will really get court sanctions. This offense was so serious that, just based on this one offense alone, I could, by law, adjudicate you a Serious Habitual Offender. I could also send you to a Level 10, which is the highest level of secure imprisonment that a young person can be sent to in the State of Florida.
However, the court ultimately sentenced B.F. to a level two commitment, which the *1065 court described as a "minimum risk non-residential program."
B.F. is correct that the trial court failed to adequately explain his right to counsel and to determine that he was knowingly and intelligently waiving that right. Waiver of the right to counsel in juvenile proceedings is governed by rule 8.165 of the Florida Rules of Juvenile Procedure. The rule states:
Rule 8.165. Providing Counsel to Parties
(a) Duty of the Court. The court shall advise the child of the child's right to counsel. The court shall appoint counsel as provided by law unless waived by the child at each stage of the proceeding. This waiver shall be in writing if made at the time of a plea of guilty or no contest or at the adjudicatory hearing.
(b) Waiver of Counsel.
(1) The failure of a child to request appointment of counsel at a particular stage in the proceedings or the child's announced intention to plead guilty shall not, in itself, constitute a waiver of counsel at any subsequent stage of the proceedings.
(2) A child shall not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry into the child's comprehension of that offer and the capacity to make that choice intelligently and understandingly has been made.

(3) No waiver shall be accepted where it appears that the party is unable to make an intelligent and understanding choice because of mental condition, age, education, experience, the nature or complexity of the case, or other factors.
(4) If a waiver is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the party appears without counsel.
(Emphasis supplied.) A knowing and intelligent waiver of the right to counsel in a juvenile proceeding appears to require the court to: (1) inform the juvenile of the benefits he would relinquish and the danger and disadvantages of representing himself, (2) determine whether the juvenile's choice was made voluntarily and intelligently, and (3) determine whether any unusual circumstances existed which would preclude the juvenile from exercising his right to represent himself. See K.M. v. State, 448 So.2d 1124, 1125 (Fla. 2d DCA 1984), cited with approval in A.P. v. State, 730 So.2d 425 (Fla. 5th DCA 1999).
It is plain from the arraignment colloquy that although B.F. had been minimally informed that he had the right to be represented by counsel, no inquiry was made either into: (1) the child's comprehension of the right to counsel or (2) the child's capacity to make the decision to waive his right to counsel in an intelligent and understanding fashion.
Virtually an identical colloquy was found insufficient in J.R.V. v. State, 715 So.2d 1135 (Fla. 5th DCA 1998), to constitute "a thorough inquiry" into either the child's comprehension of the right to counsel, or the child's capacity to make the decision to waive his right to counsel in an intelligent and understanding fashion. The court explained:
There is no evidence in the plea hearing transcript that the trial court's inquiry of appellant delved into, let alone thoroughly delved into, the factors set forth in subsection three of rule 8.165. Rather, appellant was afforded nothing more than the mere opportunity to answer yes or no to each of the court's questions. However, his diminished mental capacity and ability are evidenced in the transcript of the hearing on his motion to withdraw his plea. Contrary to the plea hearing, appellant's confusion and basic lack of understanding regarding the nature of the criminal charges against him and the consequences for entering a plea are readily *1066 apparent. Accordingly, the orders appealed should be reversed and the cause remanded to the trial court with directions to 1) advise appellant of his right to assistance of counsel; 2) if waived, ensure by a "`thorough inquiry'" that the waiver is free and intelligent; and 3) afford appellant an opportunity to enter a new plea to the charges in the petition. See N.R.L. v. State, 684 So.2d 299, 300 (Fla. 5th DCA 1996); J.H. v. State, 679 So.2d 67 (Fla. 5th DCA 1996); In Interest of D.L.A., 667 So.2d 330, 331 (Fla. 1st DCA 1995).
Id. at 1139.
Also similar is D.L. v. State, 719 So.2d 931 (Fla. 5th DCA 1998). There, in finding that the court should have granted the juvenile's later motion to withdraw his plea, this court stated:
It is clear from the transcript of the hearing on the motion to withdraw the plea that there should have been at least some doubt as to this 14 year old's clear understanding of the nature of the charges against him and of his ability to intelligently and understandingly waive his right to counsel. The motion to withdraw his plea should have been granted. See J.R.V. v. State, 715 So.2d 1135, 23 Fla. L. Weekly D1957 (Fla. 5th DCA August 21, 1998).
Id. at 934. Although the juveniles in J.R.V. and D.L.A. appeared to suffer from mental and emotional deficiencies, this circumstance does not appear essential to the court's holdings. In any event, the predisposition report in this case indicates that B.F. attends "special education" classes.
The State's argument on appeal appears to center on the fact that B.F.'s counsel did not cite rule 8.165 on appeal, but has instead relied on Florida Rules of Juvenile Procedure 8.075 and 8.080 in support of his right to withdraw his plea. It is true that defense counsel failed to cite the relevant rule, but the argument made is plainly based on the trial court's failure to determine that B.F. made a knowing and intelligent waiver of the right to counsel, and to determine that he had the capacity to make such a waiver. Indeed, as the State points out, all but one of the cases cited by B.F. in his initial brief deal with rule 8.165.
REVERSED and REMANDED.
W. SHARP, and PETERSON, JJ., concur.